UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HRB PROFESSIONAL RESOURCES LLC, a
Delaware limited liability company,

                              Petitioner,

              -v-

JUAN BELLO,

                              Respondent.

17-CV-7443 (KMK)

OPINION & ORDER

Appearances:
Jason A. Nagi, Esq.
Polsinelli PC
New York, NY
*Counsel for Petitioner*

Henry Bruce Bronson, Esq.
Bronson Law Offices PC
Harrison, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

HRB Professional Resources LLC ("HRB" or "Petitioner"), commenced this Action to confirm an arbitration award against Juan Bello ("Respondent"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 9. (Pet. to Confirm Arbitration ("Pet.") (Dkt. No. 1.).) Before the Court is Petitioner's Motion To Confirm the Arbitration Award ("Motion"). (Pet'r's Mot. To Confirm Arbitration Award ("Pet'r's Motion") (Dkt. No. 12).) For the following reasons, the Motion is granted, except as to Petitioner's request for Attorneys' fees, costs, and expenses.

## I. Background

### A. Factual Background

The following facts are taken from the Petition, Memorandum of Law in Support of the Motion, and Declaration in Support of the Motion. (Pet.; Pet'r's Mem. of Law in Supp. of Mot.

To Confirm Arbitration Award ("Pet'r's Mem.") (Dkt. No. 14); Decl. of Robert J. Hingula, Esq. ("Hingula Decl.") (Dkt. No. 13).)

Petitioner is engaged in the business of providing tax preparation and related services to companies and individuals in New York and throughout the United States. (Pet. ¶ 8.) Up until his termination for cause on February 24, 2015, Respondent worked for Petitioner for twelve tax seasons as a Tax Professional in Petitioner's Westchester, New York District. (Pet'r's Mem. 1; Hingula Decl. ¶ 4.) Petitioner's Tax Professional Employment Agreement (the "Agreement"), which Respondent signed and agreed to, governed Respondent's employment. (Pet. Ex. A ("Agreement").) The Agreement contains a valid and enforceable arbitration provision requiring both parties to submit certain "Covered Claims," including contractual and common law claims between the Parties, to binding arbitration. (Agreement § 17(a)–(b).)

On April 22, 2016, Petitioner filed a claim with the American Arbitration Association ("AAA") against Respondent pursuant to the Agreement and AAA's Employment Arbitration Rules. (Pet'r's Mem. 1; Hingula Decl. ¶ 6.) Petitioner claimed that Respondent breached the Agreement by competing with Petitioner while employed; soliciting and serving Petitioner's clients following the termination of his employment for cause; and retaining and using Petitioner's confidential and trade secret information. (Pet'r's Mem. 1; Hingula Decl. ¶ 7.) Petitioner also claimed that Respondent breached his duty of loyalty to Petitioner, unfairly competed with Petitioner, and tortiously interfered with Petitioner's business relationships, all in violation of New York common law. (Pet'r's Mem. 1; Hingula Decl. ¶ 7.)

On May 31, 2016, the Honorable Billie Colombaro was appointed to serve as Arbitrator. (Pet'r's Mem. 1; Hingula Decl. ¶ 9.) No objections were made to her appointment. (Pet'r's Mem. 1; Hingula Decl. ¶ 9.) On June 10, 2016, Respondent's attorney advised the AAA that

Respondent would not be participating in the arbitration. (Pet'r's Mem. 2; Hingula Decl. ¶ 10.) On June 23, 2016, Respondent's attorney reiterated via email that Respondent would not submit to arbitration. (Pet. Ex. B ("Award") at 2.) The AAA representative advised Respondent's attorney that the arbitration proceeding would continue absent a court order, and Respondent did not seek a stay of the arbitration or challenge the arbitrability of Petitioner's claims or the arbitration forum. (Pet'r's Mem. 2; Hingula Decl. ¶ 11.) In accordance with AAA's rules, the arbitration proceeded. (Pet'r's Mem. 2; Hingula Decl. ¶ 12.)

Respondent and his attorney received notice at each stage of the arbitration, including pre-hearing deadlines; copies of all of Petitioner's filings and correspondence between Petitioner and the AAA; the date, time, and place of the arbitration hearing; and post hearing briefing deadlines. (Pet'r's Mem. 2; Hingula Decl. ¶¶ 13–15.) Respondent did not respond to Petitioner's discovery, otherwise participate in discovery, or submit any pre-hearing filings in accordance with the arbitration scheduling order. (Pet'r's Mem. 2; Hingula Decl. ¶ 13.)

On October 12, 2016, Petitioner presented its evidence to Arbitrator Colombaro. (Pet'r's Mem. 2; Hingula Decl. ¶ 14.) Neither Respondent nor his attorney appeared at the hearing. (Pet'r's Mem. 2; Hingula Decl. ¶ 14.) Following the hearing, Petitioner submitted a closing brief on December 1, 2016. (Pet'r's Mem. 2; Hingula Decl. ¶ 15.) Respondent did not submit any briefing, nor did he submit any response to Petitioner's closing brief. (Pet'r's Mem. 2; Hingula Decl. ¶ 15.)

On February 21, 2017, Arbitrator Colombaro entered a Final Award in favor of Petitioner (the "Award"). (Award.) Respondent was ordered to immediately pay Petitioner a total of $112,875.18, consisting of: (1) $57,200.00 in monetary damages; (2) $10,000.00 in liquidated damages; (3) $39,189.90 in attorneys' fees; and (4) $6,485.28 in costs and expenses. (Award

14.)  Respondent was ordered to immediately: (1) Return to Petitioner any confidential information, trade secrets, or other company property, as defined in the Agreement, that Respondent currently possesses; (2) Provide to Petitioner a detailed accounting, during his employment with Petitioner and up to and including February 24, 2015, of: (a) all clients for whom Respondent prepared or electronically processed tax returns or to whom Respondent provided any other product or service offered by Petitioner, outside of Respondent's employment with Petitioner; (b) all clients Respondent solicited for tax preparation services and/or any other product or service offered by Petitioner, outside of Respondent's employment with Petitioner; and (c) all fees, payments, or remuneration Respondent received from offering or providing any of these services outside of his employment with Petitioner; (3) Provide to Petitioner a detailed accounting, since February 24, 2015, of: (a) all clients Respondent provided tax preparation or related services to in the 2014 and 2015 tax seasons with whom he has had contact; (b) all services Respondent has offered to provide or provided to clients he provided tax preparation or related services to in the 2014 and 2015 tax seasons; and (c) all fees, payments, or remuneration Respondent has received from offering or providing any restricted services to these clients.  (*Id.* at 14–15.)  Petitioner was granted injunctive relief, including: (1) A permanent injunction enjoining Respondent from directly or indirectly violating the Agreement; (2) A permanent injunction enjoining Respondent from directly or indirectly retaining, misappropriating, divulging, or using Petitioner's confidential information and trade secrets, including, without limitation, any client lists and/or client information obtained by Respondent from Petitioner during his employment and wrongfully retained following the termination of his employment; (3) A permanent injunction enjoining Respondent from directly or indirectly soliciting any clients he provided tax preparation or related services to in the 2014 and 2015 tax seasons for the

purposes of offering: (a) preparation of tax returns; (b) electronic filing of tax returns; or (c) any other service in direct or indirect competition with Petitioner; and (4) A permanent injunction enjoining Respondent from directly or indirectly providing to any clients he provided tax preparation or related services to in the 2014 and 2015 tax seasons any of the following services: (a) preparation of tax returns; (b) electronic filing of tax returns; or (c) any other service in direct or indirect competition with Petitioner.  (*Id.* at 15–16.)  The Arbitrator further indicated that Respondent would be subject to the injunction for two years following entry of the Award.  (*Id.* at 16.)

Respondent did not seek to vacate, modify, or correct the Award within the ninety-day limitations period provided in the Federal Arbitration Act ("FAA").  (Pet'r's Mem. 5; Hingula Decl. ¶ 18.)  Petitioner also alleges that Respondent has not complied with any aspect of the Award.  (Pet'r's Mem. 5; Hingula Decl. ¶ 19.)

B.  Procedural Background

On September 28, 2017, Petitioner filed the instant Petition to confirm the Award.  (Pet.) A copy of the summons and Petition were served on Respondent on October 16, 2017, and proof of service by the process server was filed on October 30, 2017.  (*See* Dkt. No. 6.)  Respondent did not answer the Petition, and on January 18, 2018, the Clerk of the Court issued a Certificate of Default.  (*See* Dkt. No. 8.)  On January 19, 2018, Petitioner filed its Motion, along with an accompanying memorandum of law, declaration, and supporting exhibits.  (Motion; Pet'r's Mem.; Hingula Decl.)[1]  On April 19, 2018, Petitioner filed a letter clarifying the amount of attorneys' fees sought.  (Dkt. No. 16.)

---

[1] Due to an error with the initial filing on ECF, the Motion and accompanying papers were re-filed on January 23, 2018.  (*See* Dkt. Nos. 9–14.)  The Court cites to the docket numbers of the correctly  filed documents.

5

Respondent did not oppose the Motion within the time provided, but on April 26, 2018, Respondent filed a letter to extend the time to respond to the Motion. (Dkt. No. 17.) The Court asked Respondent to file a supplemental letter, as the request was extraordinary late and lacking in details. (Dkt. No. 18.) On April 30, 2018, Respondent wrote the Court informing the Court that the attorney Respondent had engaged in October 2017 to defend this Action had failed to appear or respond to any filing. (Dkt. No. 19.) Further, Respondent explained that he had defaulted in the arbitration because his attorney at the time advised him not to defend the arbitration and that he was wrongfully terminated and needed to file a new lawsuit. (*Id.*) The letter also raised various objections to the Arbitrator's findings, and sought to file a motion to vacate the Award. (*Id.*) Petitioner opposed both the extension request and the request to file a motion to vacate the Award. (Dkt. No. 21.) Respondent acknowledged that Petitioner may well prevail on the merits, but requested an opportunity to interpose a response nonetheless. (Dkt. No. 23.) The Court granted Respondent's request. (Dkt. No. 24.)

On May 28, 2018, Respondent filed an objection to the confirmation of the Award. (Resp't's Mem. in Opp'n to Motion To Confirm Arbitration Award ("Resp't's Mem.") (Dkt. No. 25).) Petitioner filed its reply on June 22, 2018. (Pet'r's Reply Mot. To Confirm Arbitration Award ("Pet'r's Reply Mem.") (Dkt. No. 27).)

## II. Discussion

Petitioner seeks confirmation and enforcement of the Award, judgment in favor of Petitioner, and attorneys' fees and costs. For the following reasons, the Motion is granted, in part.

A.  Standard of Review

Generally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations and quotation marks omitted)); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (holding that courts cannot review merits of arbitration awards entered into pursuant to agreement between employer and labor organization); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (holding that arbitration awards are entitled to great deference by the courts). The Second Circuit has recognized that an "an extremely deferential standard of review" is appropriate in the context of arbitral awards in order "[t]o encourage and support the use of arbitration by consenting parties."  *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." (internal quotation marks omitted)).

"The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks omitted).  Accordingly, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrator[ ] is necessary to confirm the award."  *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).  "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  *Id.*

B.  Application

1.  Timeliness of Objections

There is no dispute that Respondent failed to timely serve a motion to vacate, modify, or correct the Award within the time provided under the FAA.  Petitioner argues that this fact alone justifies rejection of Respondent's arguments.  (Pet'r's Reply Mem. 2–5.)  The FAA provides that "[n]otice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  The three month deadline is "not subject to extension."  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (observing further that because an action to enforce an arbitration award is "a creature of statute . . . unknown in the common law," there is also "no common law exception" to the service period for a motion to vacate an arbitration award); *Salus Capital Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 476 (S.D.N.Y. 2018), *appeal withdrawn*, No. 18-438, 2018 WL 3954332 (2d Cir. May 22, 2018) (same).  The *Florasynth* Court reasoned:

> The role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award.  Thus, when a party to an arbitration believes that he has been prejudiced in the proceedings by behavior that the [FAA] condemns he must bring a motion to vacate within the allotted time.  When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding.

*Florasynth*, 750 F.2d at 177 (citations omitted).  Thus, a "party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run."  *Id.* at 174–75; *see also Martin v. Deutsche Bank Sec. Inc.*, 676 F. App'x 27, 28 (2d Cir. 2017) (same).

"[F]ailure to move to vacate the award within the three month time provided precludes [a party] from later seeking that relief when a motion is made to confirm the award."  *Florasynth*, 750 F.2d at 175; *see also Santos v. Gen. Elec. Co.*, No. 10-CV-6948, 2011 WL 5563544, at *12

(S.D.N.Y. Sept. 28, 2011) (noting the losing party in an arbitration "cannot challenge confirmation of [an] award on the grounds that she [or he] might have asserted in support of a vacatur order"), *adopted by* 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011). Accordingly, Respondent cannot now raise objections to the Award in opposition to the Motion, and the Court must grant Petitioner's Motion.

## 2. Confirmation of the Award

Even if the Court were to consider the merits of Respondent's Objections, the Court would still confirm the Award. Under Section 10 of the FAA, an award may be vacated: "(1) where [it] was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators . . . ; (3) where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy . . . ; or (4) where the arbitrators exceeded their powers . . . [such] that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). In addition to the grounds for vacatur specified in § 10(a), there is a fifth, "judicially-created ground, namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121–22 (2d Cir. 2011) (internal quotation marks omitted). Under Section 11 of the FAA, an award may be modified only: "(a) [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (b) [w]here the arbitrators have awarded upon a matter not submitted to them . . . (c) [w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Again, "[a]wards are confirmed so long as there is a barely colorable justification for the outcome reached." *Guerrero v. FJC Sec. Servs.*

*Inc.*, No. 12-CV-5763, 2013 WL 5273795, at *5 (S.D.N.Y. Sept. 18, 2013) (internal quotation marks omitted).

The Court has reviewed in detail the Agreement, which includes an arbitration clause; the Award; and Petitioner's and Respondent's other submissions.  First, Section 17(a)–(b) of the Agreement provides that any dispute between Petitioner and Respondent regarding "Covered Claims," which include claims under the Agreement as well as common law claims between the Parties, must be submitted to arbitration.  (Agreement § 17(a)–(b).)  Petitioner's claims against Respondent included breach of the Agreement, as well as New York common law claims for breach of the duty of loyalty, unfair competition, and tortious interference with Petitioner's business.  (Award 9.)  As such, the Arbitrator was empowered to assess the claims brought.  Respondent's suggestion that HRB was not the appropriate party to bring the arbitration or the instant Action to confirm the Award, because the Agreement was between Bello and H&R Block Eastern Enterprises and signed by H&R Block Eastern Enterprises, is not supported by the record.  (Resp't's Mem. 6–7; *see also* Agreement.)  While the initial agreement was with H&R Block Eastern Enterprises, (Agreement), the affidavit submitted by Petitioner explains that in September 2014, the H&R Block family of entities underwent a consolidation—which included H&R Block Eastern Enterprises—into HRB.  (Pet'r's Reply Ex. A (Aff. of Nicholas Timmons in Supp. of Pet'r's Motion To Confirm Arbitration Award) ¶ 4 (Dkt. No. 27).)  Pursuant to the consolidation plan and the assignment provisions in the Agreement, H&R Block Eastern Enterprises assigned its interest in the Agreement to HRB.  (*Id.* ¶ 5.)  Following the assignment, Bello was employed by HRB for the 2015 tax season.  (*Id.* ¶ 6.)  Accordingly, HRB was the proper party to initiate the arbitration.

Second, a review of the Arbitrator's decision demonstrates that it was careful and well-reasoned. The Agreement prevented Respondent from competing with Petitioner while employed, soliciting and serving certain Petitioner clients following the termination of his employment for cause, and retaining and using Petitioner's confidential and trade secret information in the aforementioned activities. (Agreement §§ 8, 9, 10.) Petitioner submitted evidence of Respondent's solicitation and servicing of its clients both during his employment with Petitioner and following his termination. (Award 7–8.) The evidence included a client who came to an HRB location to have his tax return corrected, who, when asked who had prepared the return, presented HRB with Respondent's business card with his cell phone number written on it. (*Id.* at 7.) HRB didn't have the client in the system, and when asked for a receipt, the client said "I paid cash in the men's room." (*Id.*) Petitioner's District General Manager Phillip Amundsen ("Amundsen") also testified about a woman who told HRB she had gone to Respondent's house to get her tax return prepared, but went to the HRB office to pay Respondent because she did not have money to pay him at the time the return was prepared. (*Id.* at 7–8.) Another client who came in to have his tax return corrected informed Petitioner that in 2014 and 2015 he had gone to Respondent's house to have his tax returns done, but was "coming back to H&R Block" because Respondent's fees were too expensive. (*Id.* at 8.) Amundsen also provided other examples of clients who had come in to the HRB office to have their tax returns prepared, but there was no record in the HRB system of them ever being HRB clients. (*Id.*)

Following Respondent's termination, six clients who were scheduled to meet with Respondent the Friday of the week he was terminated did not show up for their appointment. (*Id.*) When Petitioner contacted Respondent's previous clients who had not made appointments for tax season 2016, numerous former clients responded that their "friend is going to do them,"

and refused to provide the friend's name. (*Id.*) Other clients reported that Respondent had contacted them. (*Id.*) Amundsen discovered that Respondent had started a business called "Juan Bello Tax Services, Inc." almost immediately after his termination, and one review of the business was from a former client of H&R Block. (*Id.*)

The Arbitrator found the violations of the Agreement "crystal clear," and concluded that "the evidence showed that [Respondent] flagrantly and unabashedly breached [the Agreement], as well as the common law principles requiring his duty of loyalty to [Petitioner], not unfairly competing with [Petitioner], nor tortuously interfering with [Petitioner's] business relationships with its clients." (*Id.* at 9.) In accordance with the Agreement, the Arbitrator awarded liquidated damages, monetary damages, attorneys' fees, costs, and expenses, and injunctive relief. (*Id.* at 14–16.) The Award was rooted in the provisions of the Agreement and the documentary and testimonial evidence offered by Petitioner. (*Id.* at 10–14.) Respondent's contention before this Court that he did not solicit HBR clients, but rather they came to him, is largely irrelevant. (Resp't's Mem. Ex. E ("Bello Decl.") ¶ 9 (Dkt. No. 25)). The Agreement prevented Respondent from *accepting*, not just soliciting, HRB clients, (Agreement § 9); from providing competing tax services to anyone during the term of his employment with HRB, (*id.*); and from providing tax services to HRB clients for two years after his employment with HRB ended, (Agreement § 10). The record evidence was overwhelming that Respondent was providing competing tax services while employed at HRB and that after his termination he provided tax services to former HRB clients. (Award 7–8.)

Third, Respondent also argues that the methodology used to calculate damages was flawed because it does not factor in the cost of doing business and the assumption that the rate of customer loss is constant was unsound. (Resp't's Mem. 7–8.) In regard to the first argument,

the Arbitrator specifically considered the net average charge for the New Rochelle office for tax preparation, which obviously accounts for deductions of expenses. (Award 12.) Additionally, the Arbitrator specifically considered testimony in regard to the second issue—the damages calculation factored in the office-specific retention rate and the fact that office retention rates generally remain static, even after the departure of individual tax professionals, due to brand loyalty. (Award 12.)[2] "The record therefore reflects much more than a barely colorable justification for the outcome reached." *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Pulco, Inc.*, No. 17-CV-1106, 2017 WL 5634129, at *4 (S.D.N.Y. Nov. 22, 2017) (internal quotation marks omitted) (confirming unopposed arbitration award).

Finally, Respondent argues the attorneys' fees awarded by the Arbitrator were "outrageous" given the matter was "unopposed." (Resp't's Mem. 8.) Petitioner correctly points out that even though the arbitration was unopposed, the arbitration processes nonetheless proceeded as though Bello could decide to participate at any moment, and thus prepared discovery, hearing materials, and briefing and presented evidence at the hearing. (Pet'r's Mem. 11; *see also* Award 9 ("Even without the participation of Respondent, [Petitioner] must prove its case by a preponderance of the evidence.") The Arbitrator reviewed an accounting of the attorneys' fees, costs, and expenses, and found them to be reasonable and appropriate. (Award 13.) Respondent has not provided a reason not to defer to the Arbitrator's finding.

Having reviewed the record and Respondent's objections, there is no evidence that the arbitration decision was made arbitrarily, exceeded the Arbitrator's authority, or otherwise was contrary to law. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*,

---

[2] The Award also noted the damages calculation was "a very conservative calculation," because it did not factor in the unknown number of individuals who Respondent served at his home or who paid him directly while he was still employed at HRB. (Award 13.)

No. 12-CV-5, 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party."). There being more than barely colorable justification for the Arbitrator's award and no material issue of fact for trial, the Court grants Petitioner's Motion and confirms the Award.

### 3. Fees and Costs

Petitioner seeks to recover attorneys' fees of $6,912.90 and costs of $563.50. (Pet'r's Mem. 7–9.) The Agreement provides that Respondent "shall pay the Company all costs, reasonable attorneys' fees, and expenses incurred by the Company in enforcing Sections 8, 9, 10, or 11 of [the] Agreement." (Agreement § 12.) "Further, the Court may exercise its discretion to award fees and costs when a party, without justification, fails to abide by an arbitration award." *Pulco*, 2017 WL 5634129, at *5 (internal quotation marks omitted); *see also Dejil Sys.*, 2012 WL 3744802, at *4 (noting that in confirmation proceedings, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded" (internal quotation marks omitted)). "[C]ourts have routinely awarded attorneys fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Abondolo v. H & M.S. Meal Corp.*, No. 07-CV-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases).

Here, Respondent agreed to resolve disputes through binding arbitration and then refused to participate in the proceedings. Respondent has not disputed Petitioner's claim that, to date, Respondent has failed to abide by the Award. Accordingly, the award of attorneys' fees and

costs is appropriate. *See Pulco*, 2017 WL 5634129, at *5 (awarding attorneys' fees under similar circumstances); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. All. Workroom Corp.*, No. 13-CV-5096, 2013 WL 6498165, at *5–6 (S.D.N.Y. Dec. 11, 2013) (same).

### a. Standard of Review for Determining Amount of Attorneys' Fees

The question as to the amount of fees to be paid requires separate consideration. A district court has "considerable discretion" in determining what constitutes a reasonable fee award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The "presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (same). Ultimately, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Beastie Boys*, 112 F. Supp. 3d at 48 (internal quotation marks omitted) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). In resolving what a reasonable client would pay, the Court must consider the "*Johnson* factors," namely:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

The party seeking attorneys' fees "bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys*, 112 F. Supp. 3d at 48 (alterations and internal quotation marks omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that the fee applicant must submit "evidence supporting the hours worked and rates claimed"). Courts are to exclude requested hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Palmer v. Cty. of Nassau*, 977 F. Supp. 2d 161, 170 (E.D.N.Y. 2013) (same). Additionally, "[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). "There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys*, 112 F. Supp. 3d at 48 (alteration and internal quotation marks omitted).

### b. Reasonableness of Hourly Rate

A reasonable hourly rate is based on "the [current] prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (explaining that a reasonable hourly rate is one in line with rates "prevailing . . . in the community for similar services by lawyers of reasonably comparable skill, expertise[,] and reputation" (internal quotation marks omitted)). The "court may determine the reasonable hourly rate by relying both on its own knowledge of

comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (internal quotation marks omitted), *reconsideration granted in part*, No. 06-CV-593, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010). Ideally, included in the fee applicant's submissions should be affidavits providing information as to the credentials of each attorney seeking reimbursement and an affidavit by a disinterested local practitioner attesting to the relevant prevailing market rates. *See McDonald*, 450 F.3d at 97 n.5.

To support the request for fees and costs, Petitioner provides an explanation of the fees sought. (*See* Hingula Decl. ¶¶ 27–29; Hingula Decl. Ex. C ("Invoices").) The Declaration and Invoices show that Hingula, the primary attorney handling the case, billed an hourly rate of $370, an associate billed an hourly rate of $260, and the paralegal billed an hour rate of $160. (Hingula Decl. ¶ 29(d).) Hingula has been a practicing attorney for more than 12 years and the associate has been a practicing attorney for approximately 4 years, and both have "worked on numerous restrictive covenant cases for Petitioner and other clients." (*Id.* ¶ 29(h).) A partner providing limited assistance billed an hourly rate of $440. (*Id.* ¶ 29(d).) The billing rates for each of these attorneys are within the realm of what is reasonable for attorneys in the Southern District of New York. *See, e.g.*, *Coakley v. Webb*, No. 14-CV-8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (concluding "that a $575 hourly rate credits the extensive experience and qualifications of [the attorneys seeking reimbursement]"); *Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour to be a reasonable rate for an experienced litigator with nearly 20 years of experience), *aff'd*, 607 F. App'x 85 (2d Cir. 2015); *LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (finding "$600 [to be] a reasonable rate" for two senior lawyers and finding a rate of $375 an

hour for an attorney with 10 years of experience "consistent with rates recently awarded to comparably experienced lawyers in this district"); *Adorno*, 685 F. Supp. 2d at 513 ("A rate of $550 is . . . consistent with rates awarded in this district for experienced . . . lawyers."); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08-CV-5458, 2009 WL 2482134, at *4 (S.D.N.Y. Aug. 13, 2009) (finding "a rate of $400 per hour . . . reasonable" for a litigator with over 13 years of experience); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (finding attorneys' fees at rate of $425 an hour for senior partners, $300 an hour for associates, and $150 for paralegals in a breach of contract case reasonable); *see also Pulco*, 2017 WL 5634129, at *6 (confirming arbitration award and awarding attorney's fees for rates of $300 per hour for the attorney working on the case). Notably, Respondent has not contested the propriety of these rates. Finding no reason to question the reasonableness of the requested rates in light of counsels' extensive experience and the prevailing rates in the Southern District of New York, the Court concludes the rates sought by the respective attorneys here are reasonable. *See Makinen v. City of N.Y.*, No. 11-CV-7535, 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (calculating "the presumptively reasonable fee based off the rates requested" in the absence of any challenge to the general reasonableness of the billing rates); *Balu v. City of N.Y.*, No. 12-CV-1071, 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (explaining that "the [c]ourt will not adjust the rate sought" because Respondent "do[es] not challenge the reasonableness of the hourly rate [the Petitioner's attorney] seeks").

### c. Reasonableness of Hours Requested

The fee applicant also bears the burden of demonstrating the number of hours expended and the type of work performed through contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "A court evaluating the reasonableness of the number of hours claimed must examine the attorney's records that detail the time expended," *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, at *4 (S.D.N.Y. Oct. 19, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013), but must also check those records against "its own familiarity with the case and its experience generally," *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985). In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Coakley*, 2016 WL 1047079, at *6 (same). A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees. *See Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than reducing a certain number of unreasonably billed hours, the [c]ourt will make an across-the-board percentage cut in [the] plaintiffs' fee award as is necessary and appropriate."). For example, "[c]ourts look unfavorably on block billing and vagueness in billing because imprecise entries limit [their] ability to decipher whether the time expended has been reasonable." *Matteo*, 2012 WL 5177491, at *4.

When reviewing a fee application, the Court must "exclude hours that were not reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (internal quotation marks omitted). In so doing, the Court should evaluate whether the prevailing party's counsel exercised "billing judgment," that is, whether the prevailing party's counsel acted "as he [or she] would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his [or her] own clients." *Id.* (internal quotation marks omitted). Where counsel has billed for hours that are "excessive, redundant, or otherwise unnecessary," the Court

has discretion "simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (some internal quotation marks omitted) (quoting *Carey*, 711 F.2d at 1146).

In support of the instant Motion, Petitioner's counsel has submitted records indicating that counsel expended approximately 29.7 hours in connection with the instant arbitration proceedings. (Invoices.) Petitioner's declaration says the attorneys billed time for "prosecuting this matter, drafting the Petition, serving Respondent with process, and drafting the Motion." (Hingula Decl. ¶ 29(a).) However, Petitioner's billing records are redacted. (Invoices.) Respondent generally objects to the fee request, stating "[i]t is not clear why a simple motion to confirm an arbitration would result in fees of $6,485.28." (Resp't's Mem. 8.) Given the billing records submitted to the Court are redacted, the Court does not have precise records to review the nature of the work done for each hour expended. *Carey*, 711 F.2d at 1148 (noting fee applicant bears the burden of demonstrating the type of work performed). Thus, the Court cannot "examine the attorney's records" to determine whether the work conducted was appropriate and necessary for the case and whether the hours expended were reasonable, *Matteo*, 2012 WL 5177491, at *4, or determine whether the billing records included billed hours that were "excessive, redundant, or otherwise unnecessary," *Kirsch*, 148 F.3d at 173 (quoting *Carey*, 711 F.2d at 1146). Thus, Petitioner's request for attorneys' fees, costs, and expenses incurred in confirming the Award is denied without prejudice.

### III. Conclusion

For the reasons set forth herein, the Court confirms the Award, but denies the request for attorneys' fees, costs, and expenses incurred in confirming the Award without prejudice. If Petitioner wishes to renew the request, it must submit appropriate documentation to the Court

within 30 days of the date of this Order. The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 12).

SO ORDERED.

DATED:     September 27, 2018
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE